1
2
3
4
5
6
7
8
9
10

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EDWARD JAMES DRYG,

               Petitioner,

       v.

SHEILA E. MITCHELL, Chief, Santa
Clara County Probation Department,

               Respondent.

_____/

No. C 06-7729 PJH

**ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS**

     Before the court is the petition for writ of habeas corpus pursuant to 28 U.S.C. §
2254, filed by state prisoner, Edward James Dryg ("Dryg"), who is presently on probation
following a judgment of conviction in the Superior Court of California, County of Santa
Clara.  Having reviewed the parties' papers, the record, and having carefully considered
their arguments and the relevant legal authorities, the court hereby DENIES the petition.

**BACKGROUND**

**A.	Procedural Background**

     On May 3, 2001, Dryg was first charged in Santa Clara Superior Court with felony
violations of California Penal Code § 261.5(c) (unlawful sexual intercourse with minor more
than three years younger than perpetrator), § 288a(b)(1) (oral copulation with minor), and §
289(h) (forcible sexual penetration by foreign or unknown object of person under age of
eighteen), all alleged to have occurred on August 13, 1998.   On September 3, 2003, the
trial court dismissed the charges without prejudice, and the state re-filed the charges on
October 14, 2003, and subsequently amended the information on February 18, 2004.

     Dryg entered a no contest plea to all three charges on July 20, 2004.  On September

1   30, 2004, the trial court sentenced Dryg to probation and imposed a one-year county jail

2   term.  Dryg filed a notice of appeal that same day.

3        On November 29, 2004, the trial court denied Dryg's application for a certificate of

4   probable cause, and the California Court of Appeal dismissed the appeal for failure to

5   obtain such a certificate on December 15, 2005.  On March 23, 2006, Dryg filed a petition

6   for writ of habeas corpus with the state trial court, which it denied on May 22, 2006, and

7   subsequently denied on reconsideration on July 5, 2006.  Dryg then filed a petition for

8   habeas relief with California Supreme Court on August 28, 2006, which the court summarily

9   denied on September 27, 2006.

10       On December 18, 2006, Dryg filed the instant petition for federal habeas relief.

11  **B.   Factual Background**

12       The charges stem from the following alleged conduct.  During the summer of 1998,

13  Dryg, who was forty-five years-old at the time, met the sixteen year-old female victim via an

14  internet chat room.  Dryg lived in Los Gatos, California; the victim was from Houston,

15  Texas, and was living in a dormitory at the University of California-Berkeley campus

16  attending a chemistry program that summer.  After meeting online, Dryg invited the victim

17  to a coffee shop near campus, and they met and had lunch.  A few days later, Dryg

18  contacted the victim and offered to pay her to have sex with him.  The victim agreed, and

19  on August 13, 2008, Dryg picked up the victim and took her to Palo Alto, where they had

20  dinner.  After dinner, Dryg took the victim to his home, where he orally copulated her, she

21  orally copulated him, he had sexual intercourse with her, and he penetrated the victim

22  anally with a dildo.  Dryg subsequently paid the victim $250.00.  There was no further

23  sexual activity between Dryg and the victim following that night.

24       A year later, in October 1999, the victim was hospitalized for suicidal tendencies,

25  and, in the course of treatment, revealed the incident with Dryg.  She then reported the

26  incident to the Palo Alto Police Department, but because the victim was unaware of Dryg's

27  last name, authorities were unable to locate him.

28       Meanwhile, also in October 1999, Dryg was arrested in the Northern District of

1   Illinois and charged with traveling in interstate commerce for the purpose of engaging in

2   sexual acts with a person under 18 years of age, after he unknowingly corresponded on the

3   internet with an FBI agent posing as a young girl and then traveled to Chicago, Illinois.  On

4   September 12, 2000, Dryg pleaded guilty to the charge, and was sentenced to forty-one

5   months in prison and to three years supervised release.  In the course of those federal

6   proceedings, Dryg admitted to the incident with the victim in this case, and the Los Gatos

7   Police Department investigated, resulting in the charges against Dryg underlying this

8   federal habeas case.

9                                              **ISSUE**

10         Dryg raised a single claim in his habeas petition before this court:  that his trial

11   counsel rendered ineffective assistance by not properly raising and preserving his

12   challenge to the Interstate Agreement on Detainers.

13                                   **STANDARD OF REVIEW**

14         This court may entertain a petition for writ of habeas corpus "on behalf of a person

15   in custody pursuant to the judgment of a state court only on the ground that he is in custody

16   in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §

17   2254(a).  Because the petition in this case was filed after the effective date of the

18   Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the provisions of that act

19   apply here.  *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997).  Under the AEDPA, a district

20   court may not grant a petition challenging a state conviction or sentence on the basis of a

21   claim that was reviewed on the merits in state court unless the state court's adjudication of

22   the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable

23   application of, clearly established Federal law, as determined by the Supreme Court of the

24   United States; or (2) resulted in a decision that was based on an unreasonable

25   determination of the facts in light of the evidence presented in the State court proceeding."

26   28 U.S.C. § 2254 (d).

27         A state court decision is "contrary to" Supreme Court authority, falling within the first

28   clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that

United States District Court

For the Northern District of California

3

United States District Court

For the Northern District of California

1  reached by [the Supreme] Court on a question of law or if the state court decided a case

2  differently than [the Supreme] Court has on a set of materially indistinguishable facts."

3  *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  "Clearly established federal law" under §

4  2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at

5  the time the state court renders its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72

6  (2003).  This "clearly established" law "refers to the holdings, as opposed to the dicta, of

7  [Supreme] Court decisions as of the time of the relevant state court decision."  *Id.*

8           "Under the 'unreasonable application' clause" of § 2254(d)(1), a federal habeas court

9  may grant the writ if the state court identifies the correct governing legal principle from [the

10  Supreme] Court's decisions but unreasonably applies that principle to the facts of the

11  prisoner's case."  *Id.* at 74.  However, this standard "requires the state court decision to be

12  more than incorrect or erroneous."  *Id.*  For the federal court to grant habeas relief, the

13  state court's application of the Supreme Court authority must be "objectively unreasonable."

14  *Id.* at 74-75.  The "objectively unreasonable" standard is different from the "clear error"

15  standard in that "the gloss of clear error fails to give proper deference to state courts by

16  conflating error (even clear error) with unreasonableness."  *Id.* at 75; *see also Clark v.*

17  *Murphy*, 331 F.3d 1062, 1068 (9th Cir. 2003).  Therefore, "[i]t is not enough that a habeas

18  court, in its independent review of the legal question, is left with a firm conviction that the

19  state court was erroneous . . . Rather, the habeas court must conclude that the state

20  court's application of federal law was objectively unreasonable."  *Andrade*, 538 U.S. at 75;

21  *see also Clark*, 331 F.3d at 1068.

22           As for state court findings of fact, under § 2254(d)(2), a federal court may not grant a

23  habeas petition by a state prisoner unless the adjudication of a claim on the merits by a

24  state court resulted in a decision that was based on an unreasonable determination of the

25  facts in light of the evidence presented in the state court proceeding.  28 U.S.C. §

26  2254(d)(2).  The "clearly erroneous" standard of unreasonableness that applies in

27  determining the "unreasonable application" of federal law under § 2254(d)(1) also applies in

28  determining the "unreasonable determination of facts in light of the evidence" under §

4

United States District Court

For the Northern District of California

2254(d)(2).  *See Torres v . Prunty*, 223 F.3d 1103, 1107-1108 (9th Cir. 2000).  To grant

relief under 2254(d)(2), a federal court must be "left with a firm conviction that the

determination made by the state court was wrong and that the one [petitioner] urges was

correct." *Id.* at 1108.

However, when the state court decision does not articulate the rationale for its

determination or does not analyze the claim under *federal* constitutional law, a review of

that court's application of clearly established federal law is not possible.  *See Delgado v.*

*Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000); *see also* 2 J. Liebman & R. Hertz, Federal

Habeas Corpus Practice and Procedure § 32.2, at 1424-1426 & nn. 7-10 (4th ed. 2001).

When confronted with such a decision, a federal court must conduct an independent review

of the record and the relevant federal law to determine whether the state court's decision

was "contrary to, or involved an unreasonable application of, "clearly established federal

law." *Delgado*, 223 F.3d at 982.

> When a state court does not furnish a basis for its reasoning, we have no
> basis other than the record for knowing whether the state court correctly
> identified the governing legal principle or was extending the principle into a
> new context. . . .[A]lthough we cannot undertake our review by analyzing the
> basis for the state court's decision, we can view it through the 'objectively
> reasonable' lens ground by *Williams* [, 529 U.S. 362]. . . . Federal habeas
> review is not de novo when the state court does not supply reasoning for its
> decision, but an independent review of the record is required to determine
> whether the state court clearly erred in its application of controlling federal
> law. . . .  Only by that examination may we determine whether the state
> court's decision was objectively reasonable.

*Id.*

**DISCUSSION**

A.    **Legal Standards**

1.    **Ineffective Assistance of Counsel Following a Guilty Plea**

The Sixth Amendment to the United States Constitution guarantees the effective

assistance of counsel.  To support a claim of ineffective assistance of counsel, a petitioner

must make a two-part showing.  First, he must establish that, considering all the

circumstances, counsel's performance fell below an objective standard of reasonableness.

*See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Second, he must

United States District Court

For the Northern District of California

1   demonstrate that he was prejudiced by counsel's deficient performance.  *Id.* at 693-94.

2   Prejudice is found where "there is a reasonable probability that, but for counsel's

3   unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

4        Where a defendant voluntarily and intelligently pleads guilty to a criminal charge, he

5   cannot later raise in habeas corpus proceedings independent claims relating to the

6   deprivation of constitutional rights that occurred before the plea of guilty.  *Haring v. Prosise*,

7   462 U.S. 306, 319-20 (1983) (guilty plea forecloses consideration of pre-plea constitutional

8   deprivations); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (same); *Hudson v. Moran*,

9   760 F.2d 1027, 1029-30 (9th Cir. 1985) (no constitutional violation where defendant was

10  not informed that guilty plea would foreclose subsequent habeas relief).  A plea of nolo

11  contendere has the same effect as a plea of guilty.  *See Ortberg v. Moody*, 961 F.2d 135,

12  137 (9th Cir. 1992) ("petitioner's nolo contendere plea precludes him from challenging

13  alleges constitutional violations that occurred prior to the entry of that plea").

14       A criminal defendant who pleads guilty may not collaterally challenge a voluntary

15  and intelligent guilty plea entered into with the advice of competent counsel.  *United States

16  v. Broce*, 488 U.S. 563, 574 (1989).  The only challenge left open in federal habeas corpus

17  after a guilty plea is a challenge to the voluntary and intelligent character of the plea based

18  on the nature of the advice of counsel to plead.  *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985).

19  A defendant who pleads guilty on advice of counsel may attack the voluntary and intelligent

20  character of the guilty plea only by showing that the advice he received from counsel was

21  not within the range of competence demanded of attorneys in criminal cases.  *Tollett*, 411

22  U.S. at 266-67; *Lambert v. Blodgett*, 393 F.3d 943, 979-80 (9th Cir. 2004).  He must also

23  show a reasonable probability that but for counsel's errors, he would not have pleaded

24  guilty and would have insisted on going to trial.  *Strickland*, 466 U.S. at 688; *see also Hill*,

25  474 U.S. at 58-59.

26       **2.      Relevant State Law and Procedures**

27            **a.      Detainers**

28  A "detainer" is a notification filed with the institution in which a prisoner is serving a

United States District Court

For the Northern District of California

1   sentence, advising that he is wanted to face pending criminal charges in another

2   jurisdiction.  *United States v. Mauro*, 436 U.S. 340, 359 (1978).  However, the lodging of a

3   detainer is more than mere notice that an inmate is wanted in another jurisdiction.  A

4   detainer asks the institution to "hold the prisoner for the agency or to notify the agency

5   when release of the prisoner is imminent."  *People v. Oiknine*, 79 Cal.App.4th 21, 23 (Cal.

6   Ct. App. 1999).  A "formal detainer" must be filed before an inmate may invoke the

7   provisions of the Interstate Agreement on Detainers ("IAD").  *People v. Rhoden*, 216 Cal.

8   App.3d 1242, 1251 (Cal. Ct. App. 1989).

9           California Penal Code § 1389 represents the state's codification of the IAD.    It

10   establishes a procedure by which a prisoner against whom a detainer has been lodged

11   may demand trial within 180 days of a written request for final disposition properly delivered

12   to the prosecutor and appropriate court of the prosecutor's jurisdiction.  Cal. Penal Code §

13   1389, art. III.   California Penal Code § 1389, art. III provides in pertinent part:

14           (a) Whenever a person has entered upon a term of imprisonment in a penal
             or correctional institution of a party state, and whenever during the
15           continuance of the term of imprisonment there is pending in any other party
             state any untried indictment, information or complaint on the basis of which a
16           detainer has been lodged against the prisoner, he shall be brought to trial
             within one hundred eighty days after he shall have caused to be delivered to
17           the prosecuting officer and the appropriate court of the prosecuting officer's
             jurisdiction written notice of the place of his imprisonment and his request for
18           a final disposition to be made of the indictment, information or complaint:
             provided that for good cause shown in open court, the prisoner or his counsel
19           being present, the court having jurisdiction of the matter may grant any
             necessary or reasonable continuance. The request of the prisoner shall be
20           accompanied by a certificate of the appropriate official having custody of the
             prisoner, stating the term of commitment under which the prisoner is being
21           held, the time already served, the time remaining to be served on the
             sentence, the amount of good time earned, the time of parole eligibility of the
22           prisoner, and any decisions of the state parole agency relating to the prisoner.

23           (b) The written notice and request for final disposition referred to in paragraph
             (a) hereof shall be given or sent by the prisoner to the warden, commissioner
24           of corrections or other official having custody of him, who shall promptly
             forward it together with the certificate to the appropriate prosecuting official
25           and court by registered or certified mail, return receipt requested.

26           (c) The warden, commissioner of corrections or other official having custody
             of the prisoner shall promptly inform him of the source and contents of any
27           detainer lodged against him and shall also inform him of his right to make a
             request for final disposition of the indictment, information or complaint on
28           which the detainer is based.

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(d) Any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall operate as a request for final disposition of all untried indictments, informations or complaints on the basis of which detainers have been lodged against the prisoner from the state to whose prosecuting official the request for final disposition is specifically directed. The warden, commissioner of corrections or other official having custody of the prisoner shall forthwith notify all appropriate prosecuting officers and courts in the several jurisdictions within the state to which the prisoner's request for final disposition is being sent of the proceeding being initiated by the prisoner. Any notification sent pursuant to this paragraph shall be accompanied by copies of the prisoner's written notice, request, and the certificate. If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

(e) Any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall also be deemed to be a waiver of extradition with respect to any charge or proceeding contemplated thereby or included therein by reason of paragraph (d) hereof, and a waiver of extradition to the receiving state to serve any sentence there imposed upon him, after completion of his term of imprisonment in the sending state. The request for final disposition shall also constitute a consent by the prisoner to the production of his body in any court where his presence may be required in order to effectuate the purposes of this agreement and a further consent voluntarily to be returned to the original place of imprisonment in accordance with the provisions of this agreement. Nothing in this paragraph shall prevent the imposition of a concurrent sentence if otherwise permitted by law.

(f) Escape from custody by the prisoner subsequent to his execution of the request for final disposition referred to in paragraph (a) hereof shall void the request.

The IAD, in turn, also gives a state the right to obtain a prisoner for purposes of trial, in which case the state must try the prisoner within 120 days of his arrival in the state, and must not return the prisoner to his original place of imprisonment prior to that trial. *Id.*, art. IV; *see also Alabama v. Bozeman*, 533 U.S. 146, 148-50 (2001).   That article provides:

(a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated: provided that the court having jurisdiction of such indictment, information or complaint shall have duly approved, recorded and transmitted the request: and provided further that there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner.

8

United States District Court
For the Northern District of California

1
2
3
4
5

(b) Upon receipt of the officer's written request as provided in paragraph (a) hereof, the appropriate authorities having the prisoner in custody shall furnish the officer with a certificate stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner. Said authorities simultaneously shall furnish all other officers and appropriate courts in the receiving state who have lodged detainers against the prisoner with similar certificates and with notices informing them of the request for custody or availability and of the reasons therefor.

6
7
8

(c) In respect of any proceeding made possible by this Article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

9
10
11

(d) Nothing contained in this Article shall be construed to deprive any prisoner of any right which he may have to contest the legality of his delivery as provided in paragraph (a) hereof, but such delivery may not be opposed or denied on the ground that the executive authority of the sending state has not affirmatively consented to or ordered such delivery.

12
13
14

(e) If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V(e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

15

Cal. Penal Code § 1389, art. iv.

16
17

If the state[1] receiving the detainer request fails to act in compliance with the IAD, or

18

"in the event that an action on the indictment, information or complaint on the basis of

19

which the detainer has been lodged is not brought to trial within the period provided in

20

Article III or Article IV," an order shall be entered dismissing the pending criminal charges

21

with prejudice. Cal. Penal Code § 1389, art. V(c); *see, e.g., Mauro*, 436 U.S. at 364;

22

*People v. Brooks*, 189 Cal.App.3d 866, 872 (Cal. Ct. App. 1987). In order to take

23

advantage of the sanction of dismissal, however, the prisoner must strictly comply with the

24

procedural requirements of the IAD. *People v. Garner*, 224 Cal.App.3d 1363, 1371 (Cal.

25

Ct. App. 1990); *Rhoden*, 216 Cal.App.3d at 1252.

////

26
27
28

---

[1] "State" includes "a state of the United States; the United States of America; a territory or possession of the United States; the District of Columbia; the Commonwealth of Puerto Rico." Cal. Penal Code § 1389, art. II.

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### b.    Speedy Trial Rights

California Penal Code § 1381.5, which is part of California's Speedy Trial Act, permits federal prisoners with criminal proceedings pending in California courts to request to be brought to trial or to be sentenced in the state proceeding within 90 days of making the request.  If the defendant is not brought to trial or for sentencing as provided by § 1381.5, the court in which the action is pending "shall . . . dismiss the action."  Cal. Penal Code § 1381.5.

### c.    Relationship between Speedy Trial Rights and IAD Rights

Where the defendant is a federal prisoner, California Penal Code section 1381.5, governing speedy trial rights, and section 1389, governing IAD rights, might both apply. While a dismissal under section 1389 for failure to comply with the statutory IAD time limits constitutes a dismissal *with* prejudice, that is not the case for a dismissal related to a speedy trial violation under section 1381.5.  *See Selfa v. Superior Court*, 109 Cal.App.3d 182 (Cal. Ct. App. 1980); *People v. Cella*, 114 Cal.App.3d 905 (Cal. Ct. App. 1981).

As a general rule, in California, an order dismissing an action for violation of the speedy trial statute is a bar to further prosecution for the same offense if it is a misdemeanor, but not if it is a felony or a misdemeanor joined with a felony.  5 Witkin, California Criminal Law, Criminal Trials § 327 (3d ed. 2000).  Therefore, a new felony action may ordinarily be instituted after the dismissal and within the period of the statute of limitations.  In *Crockett v. Superior Court*, 14 Cal. 3d 433, 436 (Cal. 1975), the California Supreme Court explained as follows:

> Section 1387 provides that an order of dismissal of a criminal charge is not "a bar to any other prosecution for the same offense . . . if it is a felony." Included in such orders of dismissal are those granted by reason of the fact that the defendant was not brought to trial within statutory time limits. Although the right to a speedy trial is grounded in both the United States and California Constitutions, the timely refiling of charges once dismissed for denial of a speedy trial has been deemed constitutionally permissible absent a showing by the accused of actual prejudice.

In *Selfa*, the California Court of Appeal held that in cases where sections 1381.5 and 1389 both apply, the 90-day period of section 1381.5 prevails.  109 Cal. App.3d at 186.  In

**United States District Court**
For the Northern District of California

1  harmonizing the two statutes, which contain different deadlines, the court noted that "a
2  more specific statute will normally control over a general one."  *Id.* at 188.  It held that
3  section 1389 was the "more general" of the two statutes, in contrast to the speedy trial
4  statute, section 1381.5, which "applies specifically to California, and focuses upon the right
5  of prisoners in federal institutions in our state to the same 90-day trial right as provided
6  prisoners in state institutions."  *Id.*

7  **B.    Petitioner's Habeas Claim**

8        **1.    Background**

9        At the time the state charges in this case were initially filed on May 3, 2001, Dryg
10 was in the custody of the Federal Bureau of Prisons at the Federal Correctional Institution
11 in Lompoc, California, serving the sentence on his federal conviction for traveling in
12 interstate commerce for the purpose of engaging in sexual acts with a person under 18
13 years-old, imposed by the district court in the Northern District of Illinois.  On May 29, 2001,
14 the Santa Clara County District Attorney lodged a detainer with the federal warden.

15       Subsequently, on June 12, 2001, Dryg wrote a letter to Santa Clara County District
16 Attorney George Kennedy, stating that he would be released from federal custody no later
17 than September 27, 2002.  Suppl. Exh. G.   Dryg then asked whether the district attorney
18 "could . . be so kind as to continue [the state case] until that time?"  *Id.*  On August 17,
19 2001, the Santa Clara County District Attorney nevertheless mailed the warden at FCI
20 Lompoc a "Form V Request for Temporary Custody" pursuant to California Penal Code §
21 1389, which the federal prison received on August 20, 2001.

22       A few days later, on August 23, 2001, Dryg filed a request with the federal prison
23 that Santa Clara County be denied temporary custody.  Suppl. Exh. K.  Subsequently, on
24 September 9, 2001, a manager at the federal prison called the Santa Clara County district
25 attorney's office and spoke with a legal clerk.  The manager told the clerk that Dryg wanted
26 to stay in federal custody until his release date, and that he wanted to speak to a deputy
27 district attorney.  Clerk's Transcripts ("C.T.") 176.  Supervising deputy district attorney,
28 Victoria Brown, returned the call and spoke with Cheryl Hyatt, a case manager at the

United States District Court
For the Northern District of California

1   federal prison.  Hyatt confirmed that Dryg requested to serve out his federal sentence, and

2   that he had expressed concern regarding adequate time to prepare his state case.  C.T.

3   177.

4        On September 14, 2001, Dryg received a response to his request that Santa Clara

5   County be denied temporary custody.  Supp. Exh. K.  The federal warden stated in that

6   response:

7        In investigating this matter, the required paperwork has not been received to
         initiate a temporary custody transfer to Santa Clara County.  Therefore, in
8        according to Program Statement 5130.06, Detainers and the Interstate
         Agreement on Detainers Act, dated March 1, 1999, you are not eligible for
9        transfer at this time.

10  Suppl. Exh. K.  In effect, this response reassured Dryg that he wouldn't be transferred in

11  the near future.

12       Approximately five months later, on February 6, 2002, Dryg signed a form entitled

13  "Notice and Demand for Trial Pursuant to California Penal Code § 1381.5 [California's

14  speedy trial statute] by a Person in Federal Custody."  The form was mailed to the Santa

15  Clara District Attorney, where it was received on February 11, 2002, and was filed in the

16  Santa Clara Superior Court on February 19, 2002.

17       On May 31, 2002, Dryg filed a pro se motion to dismiss, asserting that the

18  prosecution had violated the statutory time limits of both the speedy trial statute and

19  California's IAD statute, Penal Code §§ 1381.5 and 1389, art. IV.  Regarding the IAD, Dryg

20  argued now – contrary to his prior objections to any transfer pursuant to § 1389 – that the

21  state was required to try him within 180 days of the district attorney's August 2001 request

22  for temporary custody, which would have been around February 11, 2002.  Dryg also

23  argued that the state violated his speedy trial rights under § 1381.5 by failing to bring him to

24  trial by early May 2002, ninety days from February 6, 2002, the date that Dryg filed his

25  notice and demand for trial pursuant to that statute.

26       In July 2002, the state called the federal prison to inquire regarding the status of its

27  request for temporary custody, and was told that Dryg refused to complete and sign the

28  necessary paperwork for his release, and thus could not be transferred to state custody.

Reporter's Transcripts ("R.T.") at 35-36; C.T. 177.  Apparently, Dryg refused to sign forms

that would release him for trial on at least two occasions.  R.T. 40, R.T. 53-54; C.T. 177.

Additionally, Dryg again wrote to District Attorney George Kennedy on September 18,

2002, communicating that he was "not terribly interested in going to trial [at the time]," and

that the state could continue his trial until his release.  R.T. 41.[2]

Dryg ultimately remained in federal custody at FCI Lompoc until he had finished

serving his federal sentence on September 27, 2002, when he was placed in the custody of

the Santa Clara County Superior Court.  On November 13, 2002, Dryg waived time.  C.T.

178.  Apparently, an information was not filed until June 30, 2003.  R.T. 36.  After Dryg was

brought to Santa Clara County, he was arraigned, entered a not guilty plea, and was

subsequently released from custody on bail.

Santa Clara County Superior Court Judge Marc Poche held a two-day hearing on

Dryg's motion to dismiss, filed in May 2002, on August 29, 2003 and September 3, 2003.

In the meantime, Dryg had retained counsel, Jerome Mullins, who represented him at the

hearings.  The court heard argument all day on August 29, 2003.  Dryg admitted a number

of exhibits, A-V, in conjunction with the hearing.[3]  The court then continued the hearing to

September 3, 2003 to provide it and the parties additional time to consider the relevant

authority.

Following an additional lengthy hearing on September 3, 2003, the court granted

Dryg's motion to dismiss, but without prejudice.  The court found that the 90-day limit of §

1381.5, the speedy trial statute – not the 120-day limit of § 1389 – applied, based on the

rule articulated in *Selfa*.  109 Cal.App.3d at 188 (where prisoner's demand for speedy trial

---

[2]At the August 29, 2003 hearing, Dryg's counsel, Mullins, argued that it was irrelevant
that Dryg may have subsequently indicated a desire to remain in federal custody instead of
proceeding to trial on the state charges.  R.T. 43.  Mullins argued that once Dryg made the
demand for a speedy trial on February 6, 2002, the state must honor that request and the
defendant is not subsequently able to withdraw his request for a speedy trial other than
through an open court waiver of his speedy trial right.  R.T. 44-45.

[3]The court has referred to those exhibits, a part of the record before this court, as
"supplemental exhibits."

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  complies with both § 1381.5 and § 1389, 90-day period provided by § 1381.5 controls over

2  180-day period provided by § 1389).  The court noted that under Penal Code § 1387, the

3  dismissal would be without prejudice.  The court also indicated that were it not for the

4  *Selfa* rule, it would have found that Dryg made a proper demand under Article III of the IAD,

5  section 1389, and that the dismissal would have been with prejudice.  Finally, the court

6  suggested on the record that perhaps an extraordinary writ should be explored.  R.T. 91.

7      Dryg, however, did not file an appeal or seek an extraordinary writ following the trial

8  court's September 3, 2003 dismissal without prejudice.  He asserts that this was because

9  "the prosecution did not immediately re-file the charges."  Petition at ¶ 19.  According to

10 Dryg, he does not fault his then-attorney, Jerome Mullins' failure to seek post-dismissal

11 relief because "there was no basis to file an appeal."  *Id.*  Dryg concedes that when the

12 district attorney re-filed the felony charges against him approximately forty days later on

13 October 14, 2003, "the time for filing an appeal from the first case had passed." *Id.*[4]

14     After the charges were re-filed on October 14, 2003, Dryg made his first appearance

15 on November 11, 2003, and represented himself at the preliminary hearing on December 2,

16 2003.[5]  On December 16, 2003, the state filed the information, and Dryg was arraigned on

17 December 22, 2003, at which time he signed an application to represent himself.  On

18 January 14, 2004, however, Dryg decided to seek another attorney.

19     On February 4, 2004, Dryg retained attorney Guyton Jinkerson, and filed a demurrer

20 to the charges, on the ground that the three-year statute of limitations had run,[6] and also

21 based on the fact that the information failed to provide any justification for an extension of

22 the limitations period.  On February 18, 2004, the trial court sustained Dryg's demurrer, but

23

24     [4]The court thus notes that it is clear that Dryg does *not* claim here, nor did he ever raise
   the issue before the state courts, that *Mullins'* failure to file an appeal or seek an extraordinary
25 writ of the September 3, 2003 dismissal without prejudice constituted ineffective assistance of
   counsel.

26     [5]In the current petition, Dryg simply states that he was "unable to retain Mr. Mullins" for
27 the second prosecution.  Petition at ¶ 20.

28     [6] Under California Penal Code § 803, the statute of limitations on the charged offenses
   was three years.

1   granted the prosecution's request to amend the information in order to address the statute

2   of limitations issue.  The state filed its first amended information on February 18, 2004.

3       On March 17, 2004, Dryg subsequently filed another demurrer to the first amended

4   information, again arguing that the state failed to allege that the statute of limitations for the

5   charged offenses had been tolled.  C.T. 92.  In an order issued April 7, 2004, Santa Clara

6   County Superior Court Judge Kevin Murphy found that the prior prosecution for the same

7   offenses tolled the statute of limitations.  C.T. 115-119.  The superior court noted that there

8   had been approximately three months and ten days left in the limitations period at the time

9   the first prosecution began on May 3, 2001 (the date of issuance of the original warrant);

10  that the limitation period was tolled until the first prosecution was terminated on September

11  3, 2003; and that the second prosecution began on October 28, 2003 (the date of issuance

12  of the new arrest warrant).  Because the elapsed time between September 3, 2003, and

13  October 28, 2003, was less than the number of days left in the limitations period, the court

14  concluded that the limitations period had not yet run.  However, the court agreed with Dryg

15  that on its face, the amended information failed to plead facts indicating that the charges

16  were not barred by the statute of limitations.  The court therefore granted the prosecution

17  leave to amend again so that the information would facially comply with the statute of

18  limitations, and denied Dryg's demurrer in all other respects.

19      On April 7, 2004, Dryg filed a "once in jeopardy" plea.  Subsequently, on April 28,

20  2004, Dryg filed another motion to dismiss the information based on speedy trial violations.

21  C.T. 129.  In support, Dryg argued that based on California case law, *Zimmerman v.*

22  *Superior Court*, 248 Cal.App.2d 56, 62 (Cal. Ct. App. 1967), the charges contained in the

23  information should be dismissed based on the state's failure to respond to Dryg's §§ 1381.5

24  and 1389 demands for a speedy trial.  Dryg further argued that the statute of limitations

25  should not be tolled during the time between May 2002, when he filed his first motion to

26  dismiss pursuant to §§ 1381.5 and 1389,  and September 2003, when the trial court finally

27  heard his motion.  Dryg also argued that it was the state's burden to establish good cause

28  for the delay upon refiling charges after the speedy trial dismissal in September 2003.

United States District Court

For the Northern District of California

1    Alternatively, Dryg argued that he had suffered actual prejudice as a result of the delay due

2    to the loss of: (1) physical evidence, (2) favorable evidence, (3) material witnesses, and (4)

3    the opportunity to receive concurrent sentences and other procedural rights.  C.T. 138.

4        The state opposed Dryg's motion, and noted that one of the reasons that he was not

5    released from federal custody until September 2002 was because the state never received

6    the required documents from the federal prison granting it temporary custody of him, as

7    required by § 1381.5, and thus the state was unable to complete the required forms to

8    transport Dryg to Santa Clara County.  C.T. 177.  The state further noted that one of the

9    reasons that it did not receive the requisite documents was because Dryg refused to sign

10   them.  *Id.*

11       As for the law, the state argued that after a dismissal on speedy trial grounds

12   pursuant to § 1381.5, it was the *defendant's* burden to show actual prejudice, and not the

13   state's burden to show good cause at the time of refiling the criminal charges.  The state

14   further argued that Dryg had not shown actual prejudice.

15       Santa Clara County Superior Court Judge Randolph Rice heard Dryg's motion to

16   dismiss on June 25, 2004.  The court denied Dryg's motion, concluding that the time period

17   at issue was indeed statutorily tolled.  However, the court denied without prejudice, and

18   declined to rule on the issue regarding whether the delay prejudiced Dryg, determining that

19   the issue was "more properly heard by the trial judge who hears the evidence in this case."

20   June 25, 2004 Transcripts at 14.

21       However, on July 20, 2004, Dryg entered a plea of no contest to all three charges.

22   Subsequently, on August 26, 2004, Dryg filed a motion to arrest judgment, arguing that

23   each charge in the amended information was barred by the statute of limitations, and that

24   the statute of limitations was not tolled by the filing of the arrest warrant on May 3, 2001,

25   because the case was dismissed.  Dryg also renewed the arguments he had made in

26   connection with his April 28, 2004 motion to dismiss based on the alleged violations of

27   Penal Code §§ 1381.5 and 1389.  On September 30, 2004, the superior court denied the

28   motion to arrest judgment and imposed sentence pursuant to the terms of the plea

United States District Court

For the Northern District of California

1

agreement.

2

That same day, on September 30, 2004, Dryg filed a notice of appeal, appealing the

3

trial court's: (1) April 7, 2004 order overruling his demurrer to the first amended information;

4

(2) June 25, 2004 denial of his motion to dismiss; (3) September 30, 2004 denial of his

5

motion to arrest of judgment; and (4) September 30, 2004 order granting probation.

6

Subsequently, on November 24, 2004, current federal habeas counsel, Andrew Parnes,

7

filed an application for issuance of a certificate of probable cause on Dryg's behalf.  In that

8

application, Dryg asserted that there were reasonable constitutional or jurisdictional

9

grounds regarding the legality of the proceeding for review on appeal that were not related

10

to a challenge of the validity of the plea itself.  C.T. 328.  He contended that these issues

11

included whether the statute of limitations was violated, and whether the state complied

12

with Penal Code §§ 1381.5 and 1389.

13

On November 29, 2004, the Superior Court summarily denied the application for a

14

certificate of probable cause, and the California Court of Appeal subsequently dismissed

15

the appeal on December 15, 2005.

16

On March 23, 2006, Dryg filed a petition for writ of habeas corpus in the Santa

17

Clara Superior Court.  In that petition, Dryg alleged that Jinkerson was ineffective for failing

18

to argue that the re-filed charges should have been dismissed with prejudice pursuant to §

19

1389 and for failing to preserve that issue for appeal.  In spite of the fact that the same

20

court had previously denied a certificate of probable cause on the issues, the superior court

21

nevertheless addressed Dryg's claims on the merits on habeas review.  It found that Dryg's

22

February 2002 speedy trial request under § 1381.5 failed to comply with the requirements

23

of Penal Code § 1389, and that Dryg was therefore not entitled to seek a dismissal with

24

prejudice under § 1389.  The court concluded that Jinkerson was therefore not ineffective

25

for failing to "resurrect" the § 1389 dismissal claim, or for failing to obtain a certificate of

26

probable cause on the issue.

27

Dryg subsequently sought reconsideration of the superior court's order denying him

28

habeas relief.  Dryg argued in the motion that "at a pre-trial proceeding, the trial judge

17

United States District Court

For the Northern District of California

1  found that [Dryg's] notice did comply with the requirements of a § 1389 motion and that the

2  court [was] bound to give that decision effect under the doctrines of res judicata and

3  collateral estoppel." Exh. C at 228-29.[7]  In denying Dryg's motion for reconsideration, the

4  court noted that under state law, there was no "law of the case" preventing it from

5  concluding that the trial court had erred to the extent that it believed Dryg met the

6  requirements of a § 1389 motion.  Exh. C at 229.  The court further noted the problems with

7  Dryg's argument, asserting that if Dryg "were correct, then the doctrines of res judicata and

8  collateral estoppel would [also] necessarily prevent him from challenging, on collateral

9  attack, the trial court's decision to dismiss without prejudice."  *Id.*

10      On August 28, 2006, Dryg subsequently filed a petition for writ of habeas corpus

11  before the California Supreme Court, which summarily denied his petition on September

12  27, 2006.

13      **2.    Analysis**

14      As this court noted in its January 18, 2007 order to show cause, because Dryg

15  pleaded guilty, he cannot simply raise *any* ineffective assistance of counsel claim he

16  chooses.  Dryg waived any claims for ineffective assistance of counsel based on conduct

17  that occurred *prior* to the entry of his no contest plea on July 20, 2004.  The only claims

18  that Dryg may now raise concern: (1) counsel's omissions and/or conduct that occurred

19  *after* the entry of his plea; and/or (2) advice that Dryg received in connection with his

20  decision to plead no contest that rendered his plea involuntary.

21      In its January 18, 2007 order to show cause, the court liberally construed Dryg's

22  petition and accompanying declaration to set forth such cognizable claim(s).  However, the

23  court expressed concern regarding whether or not Dryg had exhausted such claim(s)

24  before the state courts, and required briefing on the issue.  Again, on July 10, 2007, the

25  _____

26      [7]Presumably, the "finding" to which Dryg referred in his motion for reconsideration was
    a statement made by Superior Court Judge Poche on September 3, 2003 in dismissing the
27  case without prejudice.  *See* R.T. at 183 ("My view [is] that 1389 was violated in the sense that
    [Dryg] made his demand in the proper forum, the proper way and he was not brought to trial
28  within the time limits set forth within.").

United States District Court
For the Northern District of California

1  court ruled in Dryg's favor, liberally construing his California Supreme Court habeas petition

2  – which included the claim that his trial counsel rendered ineffective assistance by not

3  properly raising and preserving his challenge to the Interstate Agreement on Detainers – to

4  have nevertheless exhausted the above cognizable post-no contest plea claim(s), and

5  allowed for briefing on the merits.

6  Unfortunately, in the briefing that followed this court's July 10, 2007 order, the

7  parties, especially Dryg, have to a large degree argued Dryg's ineffective assistance of

8  counsel sub-claims as straightforward ones for ineffective assistance of counsel, rather

9  than framing them in light of the appropriate legal standards given the fact that Dryg

10 pleaded no contest.  Upon close review, the majority of Dryg's arguments do not concern

11 his counsel's post-plea performance or advice that he received from counsel *in conjunction*

12 *with his no contest plea,* but instead concern his counsel's performance prior to the entry of

13 his plea.  Because those arguments were waived by Dryg's no contest plea,  the court

14 declines to address them.

15 The waived, non-cognizable sub-claims include Dryg's argument that Jinkerson

16 provided ineffective assistance of counsel by failing to pursue detainer challenges prior to

17 the entry of his guilty plea, by specifically (a) failing to renew the motion to dismiss under §

18 1389 after the charges were re-filed; (b) failing to argue under *Zimmerman v. Superior*

19 *Court*, 248 Cal. App. 2d 56 (1967), that it was "unreasonable" to permit the prosecution to

20 file a new complaint on the same charges after the expiration of the statute of limitations

21 when the prosecution was at fault for not bringing him to trial within the 180 days required

22 under § 1389, art. III, or within the 120 days required under § 1389, art. IV; (c) failing to

23 argue a claim based on petitioner's alleged "once in jeopardy" plea; and (d) failing to argue

24 that even before Dryg filed his Art. III section 1389 request, he was entitled to dismissal

25 under Article IV section 1389.

26 By contrast, the only cognizable sub-claims raised by Dryg include his arguments

27 that Jinkerson provided ineffective assistance of counsel by:  (a) failing to inform him that a

28 certificate of probable cause was necessary for him to appeal certain claims if he pleaded

United States District Court
For the Northern District of California

1   guilty or no contest; (b) failing to inform him that he could pursue a petition for writ of

2   mandate or prohibition before trial on the detainer-related issues; and (c) failing to properly

3   preserve issues regarding the detainer for appeal.

4         In a declaration that he filed with this court and with his habeas petitions before the

5   state courts, Dryg attests that his counsel, Jinkerson "knew that I believed that my rights

6   under *Zimmerman* and [Penal Code § 1389, arts. III & IV] had been violated, and that I

7   wished to pursue this legal issue to the higher courts." Exh. O, Petition.  He also asserts

8   that Jinkerson told him that all of his appellate rights would be preserved if he pled no

9   contest.  Dryg further asserts that "[o]n advice of counsel, and clearly believing my appeal

10  rights were indeed preserved and would survive a guilty plea, I did so consent to plead

11  guilty."  Finally, he attests that Jinkerson's assessment of the legal issues and his advice

12  that Dryg's issues would be preserved for appeal were "the only factors I considered

13  regarding my decision to accept the guilty plea in the trial court." *Id.*

14              **a.      Failure to Preserve Issues for Appeal**

15        Dryg asserts that although Jinkerson filed a notice of appeal, he did not properly

16  preserve his issues for appeal.   Reply at 5.  To the extent that Dryg is arguing that

17  Jinkerson failed to file a request for a certificate of probable cause, any such failure was not

18  prejudicial because Dryg's current federal habeas counsel filed a timely request for such a

19  certificate.

20        As noted above, on September 30, 2004, the same day that the trial court denied

21  Dryg's post-plea motion to arrest judgment, Jinkerson filed a notice of appeal on Dryg's

22  behalf, listing several issues.  Jinkerson, however, did not file a request for a certificate of

23  probable cause.

24        In the case of a judgment of conviction following a guilty plea, California Penal Code

25  section 1237.5 authorizes an appeal only as to a particular category of issues and requires

26  that steps in addition to filing a notice of appeal be taken. *In re Chavez*, 30 Cal. 4th 643,

27

28

United States District Court

For the Northern District of California

1  650 (Cal. 2003).[8]  In order to challenge any issues concerning the validity of a guilty plea, a

2  defendant must first obtain a certificate of probable cause from the trial court, and an

3  appeal of any such issues will not be operative unless the defendant does so.  *See id.*  The

4  procedural requirement is applied in a "strict manner," *People v. Mendez*, 19 Cal. 4th 1084,

5  1096-97 (Cal. 1999), "regardless of other procedural challenges being made."  *Chavez*,  30

6  Cal. 4th at 650.  "For example, a defendant who has filed a motion to withdraw a guilty plea

7  that has been denied by the trial court must still secure a certificate of probable cause in

8  order to challenge on appeal the validity of the guilty plea."  *Id.*

9       The purpose in requiring a certificate of probable cause following guilty pleas is "to

10  promote judicial economy by screening out wholly frivolous guilty plea appeals before time

11  and money are spent on such matters as the preparation of the record on appeal, the

12  appointment of appellate counsel, and, of course, consideration and decision of the appeal

13  itself."  *Chavez*, 30 Cal. 4th at 651 (quoting *Mendez*, 19 Cal. 4th at 1095).  Under section

14  1237.5, the trial court has the discretion to deny a certificate when an appeal would raise

15  frivolous and vexatious issues.  *People v. Hoffard*, 10 Cal. 4th 1170, 1178-79 (Cal. 1995);

16  *see also Ramis v. People*, 74 Cal.App.3d 325, 376 (Cal. Ct. App. 1977) (concluding that

17  superior court did not abuse its discretion in denying certificate of probable cause where

18  the record indicated that defendant did not have any grounds for setting aside his plea);

19  *People v. Nigro*, 39 Cal.App.3d 506 (Cal. Ct. App. 1974) (concluding that record supported

20  trial court's denial of certificate where it showed that in pleading nolo contendere, defendant

21  conceded that he "knew quite well" what he was doing and did not support defendant's

22  _____

23       [8]Section 1237.5 provides:

24       No appeal shall be taken by the defendant from a judgment of conviction upon
         a plea of guilty or nolo contendre, or a revocation of probation following an
25       admission of violation, except where both of the following are met:

26       (a) The defendant has filed with the trial court a written statement, executed
         under oath or penalty of perjury showing reasonable constitutional, jurisdictional,
27       or other grounds going to the legality of the proceedings.

28       (b) The trial court has executed and filed a certificate of probable cause for such
         appeal with the clerk of the court.

1    vague, subjective feeling of pressure or coercion).

2        At the time that Dryg appealed to the California courts, former California Rule of

3    Court 31(d) set forth the applicable deadlines, as well as other conditions, for filing a

4    request for a certificate for probable cause, and provided in pertinent part:

5        If a judgment of conviction is entered upon a plea of guilty or nolo contendere,
         the defendant shall, within 60 days after the judgment is rendered, file as an
6        intended notice of appeal the statement required by section 1237.5 of the
         Penal Code; but the appeal shall not be operative unless the trial court
7        executes and files the certificate of probable cause required by that section.
         Within 20 days after the defendant files the statement the trial court shall
8        execute and file either a certificate of probable cause or an order denying a
         certificate and shall forthwith notify the parties of the granting or denial of the
9        certificate.[9]

10       Although Jinkerson did not file a request for such a certificate, Dryg's current

11   counsel subsequently filed a timely request, which the superior court subsequently

12   considered and denied on the merits.  Petition, Exh. K.  Accordingly, Jinkerson's failure to

13   request such a certificate did not prejudice Dryg.  Moreover, to the extent that this claim is

14   a veiled attempt to argue that Jinkerson's performance prior to Dryg's plea was ineffective,

15   this claim is not cognizable for the reasons stated above.

16              **b.    Counsel's Advice re: the Necessity of a Certificate of Probable**
                       **Cause and the Possibility of a Petition for Writ of Mandate or**
17                     **Prohibition**

18       Because Dryg's current counsel filed a timely request for a certificate of probable

19   cause, which was adjudicated by the state court on the merits, Dryg's argument cannot be

20   that Jinkerson's failure to inform him of the necessity of the certificate prevented him from

21   timely seeking one.  Instead, although it is not clear, it appears that Dryg's argument is that

22   he would have preferred to raise the issues contained in his application for a certificate of

23   probable cause via a writ of prohibition or mandamus prior to trial, or perhaps on direct

24   appeal, if possible, as opposed to having the issues screened for frivolity as they are prior

25

26

27       [9]After Dryg's appeal, the Judicial Council of California repealed Rule 31(d) and moved
28   its provisions, as amended to former Rule 30(b), effective January 1, 2004.  It then
     renumbered Rule 30(b), as Rule 8.304(b).

United States District Court

For the Northern District of California

1   to issuance of a certificate of probability.[10]  *See Hoffard*, 10 Cal. 4th at 1178-79.

2       Assuming that Jinkerson indeed failed to advise Dryg of the above, the court

3   concludes that Jinkerson's conduct was not deficient, and also that Dryg was not

4   prejudiced by any such failure.  First, there is no evidence that Dryg would not have pled

5   guilty had he known that he was required to request a certificate of probable cause.  Dryg

6   simply asserts that he pled guilty on counsel's advice that counsel would preserve his

7   appellate rights.  As noted above, Dryg's appellate rights were preserved to the maximum

8   extent possible following a guilty plea.  Jinkerson simply could not have predicted, nor was

9   he required to predict that the trial court would deny Dryg's request for a certificate of

10  appealability as frivolous.  *See Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002) (in

11  advising a defendant, "[c]ounsel cannot be required to accurately predict what the . . . court

12  might find, but he can be required to give the defendant the tools he needs to make an

13  intelligent decision").

14      Second, to the extent a writ was available to Dryg pre-plea to challenge the trial

15  court's 2003 dismissal without prejudice, the record demonstrates that the request for such

16  writ should have been filed by Mullins - as opposed to Jinkerson.  Dryg himself admits that

17  Jinkerson did not enter the case until, in Dryg's view, there was no point in filing an appeal

18  (or presumably a writ).  Furthermore, Dryg very clearly has not challenged Mullins'

19  performance as ineffective.

20      Finally, the superior court's denial of the request for the certificate of appealability

21  was *not* the last word on Dryg's detainer-related claims.  Dryg raised them in habeas

22  petitions before the state courts, albeit unsuccessfully, and the courts addressed and

23  rejected his claims on the merits.

24  _____

25      [10]In his California Supreme Court petition, Dryg argued that "[t]rial counsel did not inform
    [him] that he could file a Petition for Writ of Mandamus or Prohibition before trial, if the motion
26  to dismiss had been made and denied in trial court."  Exh. C at 22.  However, Dryg altered the
    argument in the petition filed before this court such that it differs slightly from the argument that
27  Dryg actually exhausted.  In his opening petition before this court, Dryg instead asserts that
    "[t]rial counsel informed [him] that . . . there was no need to raise the issue in a Petition for Writ
28  of Mandate or Prohibition before trial."  Petition at 10.  Pursuant, to this court's July 10, 2007
    order, the court will adjudicate the issue *as exhausted* before the state courts.

United States District Court

For the Northern District of California

1    For these reasons, Dryg's claim fails.

2    **C.    Request for Evidentiary Hearing and Discovery**

3        In his traverse, Dryg requests that in the event the court "believes that there may

4    have been some strategic reason for [Jinkerson's] failure to raise and preserve the issues

5    for appeal," that he be provided the opportunity to depose Jinkerson.  However, because

6    the court concludes that Dryg's appellate rights were preserved to the maximum extent

7    possible following a guilty plea, a deposition would be fruitless, and Dryg's request is

8    therefore DENIED.

9        Dryg also requests an evidentiary hearing on his claims.  The requirements of 28

10   U.S.C. § 2254(e)(2), govern requests for evidentiary hearings.  *See Cooper-Smith v.*

11   *Palmateer,* 397 F.3d 1236, 1241 (9th Cir. 2005).  Section 2254(e)(2) provides:

12       If the applicant has failed to develop the factual basis of a claim in state court
         proceedings, the court shall not hold an evidentiary hearing unless the
13       applicant shows that:

14       (A) the claim relies on–

15           (i) a new rule of constitutional law, made retroactive to cases on
         collateral review by the Supreme Court, that was previously unavailable; or
16
             (ii) a factual predicate that could not have been previously discovered
17       through the exercise of due diligence; *and*

18
         (B) the facts underlying the claim would be sufficient to establish by clear and
19       convincing evidence that but for constitutional error, no reasonable factfinder
         would have found the applicant guilty of the underlying offense.
20

21       The United States Supreme Court has interpreted the opening paragraph of the

22   section to provide that where a petitioner has indeed exercised diligence to "develop the

23   factual bases" of his claims in state court, the requirements of section 2254(e)(2)(A)&(B) do

24   not apply to his request for an evidentiary hearing.  *Williams v. Taylor*, 529 U.S. 420, 435

25   (2000); *Holland v. Jackson*, 542 U.S. 649, 652-53 (2004).  In other words, a petitioner who

26   has exercised such diligence will be taken out of the purview of section 2254(e)(2).  *Griffey*

27   *v. Williams*, 345 F.3d 1058 (9th Cir.  2003), *vacated on other grounds as moot*, 349 F.3d

28   1157 (9th Cir.2003) (petitioner died); *Williams*, 529 U.S. at 430 (showing under 2254(e)(2)

24

United States District Court

For the Northern District of California

1  "applies only to prisoners who have 'failed to develop the factual basis of a claim in state

2  court proceedings'").

3          Diligence "depends upon whether petitioner made a reasonable attempt, in light of

4  the information available at the time, to investigate and pursue claims in state court."

5  *Cooper-Smith*, 397 F.3d at 1241 (quoting *Williams*, 529 U.S. at 435).  Diligence requires in

6  the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in

7  the manner prescribed by state law.  *Williams*, 529 U.S. at 435.

8          Dryg did exercise diligence in so far as he requested an evidentiary hearing before

9  the state courts in conjunction with his state habeas petitions.  However, even though Dryg

10  may have exercised diligence in making the request before the state court, there is no per

11  se requirement for an evidentiary hearing.  *Turner*, 281 F.3d at 890.   A petitioner is entitled

12  to an evidentiary hearing on ineffective assistance of counsel claims only if he can

13  demonstrate that, if his allegations were proven at the evidentiary hearing, deficient

14  performance and prejudice would be established.  *See id.*  Here, the court finds that there

15  is nothing "more an evidentiary hearing might reveal of material import."  *See Gandarela v.*

16  *Johnson*, 286 F.3d 1080, 1087 (9th Cir. 2002) (denying petitioner's request for evidentiary

17  hearing regarding his assertion of actual innocence).  Because Dryg's claims may be

18  resolved by reference to the state court record and the documentary evidence he has

19  submitted, the court denies his request for an evidentiary hearing.  *See Griffey*, 345 F.3d at

20  1067 (even where petitioner had shown diligence entitling him to evidentiary hearing, Ninth

21  Circuit concluded that petitioner was not entitled to evidentiary hearing because his claims

22  could be resolved by reference to the state court record and the documentary evidence he

23  submitted); *see also Campbell v. Wood*, 18 F.3d 662, 679 (9th Cir. 1994).

24                                       **CONCLUSION**

25          For the reasons set forth above, Dryg's petition for writ of habeas corpus is DENIED

26  because the state court's decision was neither contrary to, nor an unreasonable application

27  of, clearly established federal law; nor was it based on an unreasonable determination of

28  the facts in light of the evidence presented.  This order fully adjudicates this case and

terminates all pending motions.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: April 13, 2009

_____
PHYLLIS J. HAMILTON
United States District Judge